Good morning. May it please the Court, my name is Alex Dietz, and I am here on behalf of the Plaintiff Appellant Diane Young and the putative class that she seeks to represent of her fellow Washington insureds. The primary issue presented by this appeal, and frankly by the case as a whole, is a legal question. When an insurance company is providing personal injury protection coverage, also referred to as PIP, and an insurance adjuster decides that they think the file indicates treatment sought may not be reasonable, necessary, or related to a claimed accident that's covered, does the insurance company have the ability to stop payment before it obtains a qualified supporting medical opinion to back up its adjuster's suspicions? Can I ask a question just preliminarily? The district court decided that issue as a matter of law and said no, but it recognized that there wasn't really any Washington law on point, and also ruled that it wouldn't certify the question because I guess plaintiffs raised, you raised this issue of certification after you lost before the district court. How does that affect us? Do you still think this is a question that should be certified, and would we be free to certify it if we so decided? That's a great question, Your Honor. Our position is that the McGee-Grant case is the most compelling authority that we've been able to find in support of this, which is the district court case. We don't really have state law on point. Yes, and so what we're left with, Your Honor, is the language of the regulation itself and cases about not precisely this issue, but relating to PIP concerns that address the policy behind PIP coverage that support our position because essentially the purpose of PIP coverage is to ensure the speedy payment of medical bills in a no-fault system, and so even though there isn't a direct Washington case on point on this specific whack, it's our position that the existing case law indicates Washington's policy supports our reading of the regulations, and to answer your question more directly, the answer is yes. If the panel believes that this interpretation question requires hearing from the Washington Supreme Court, the court could certify that question to the Supreme Court. I know I have to eat crow a little bit on this because we only asked for it at the district court after we failed to convince the judge that we were right, and you'll note we didn't ask for certification in our briefing, but if the court believes that the Washington Supreme Court is the correct body to make a final determination on the correct interpretation of this whack, that's something that this is in this court's power to do. But following up on that, is this an issue that arises with sufficient frequency to warrant certification? And that seems to be an awfully large draw on the resources of the state court. Yes, your honor. Our understanding is that the reason this whack was enacted in the first place is because there was considerable number of complaints to the office of the insurance commissioner about how insurance companies like travelers were going about informing their insureds that their treatment was going to be denied coverage. And so if I the prior year or two before the the regulation was enacted, and so we think this is something that would come up. Also, the difference here is that standards started to began paying and then suspended the payments, and the district court was persuaded that a suspension is different denial. And so just following up on Judge Fitzwater's question, is this sort of practice of beginning to pay then suspending payments? Because that's really what the question would be about. Is this something that's covered by IFCA? Is that how you all say it? Yes, your honor. And again, our position is that the answer to that question is yes. Frankly, we can look at to see how frequently this issue comes up because it's their own policy. They say they do this in every single coverage case. If an insurance adjuster looks at a file and says, you know, I think that there might be a medical issue here about whether or not treatment is reasonable, necessary or related, then I'm going to stop payment of benefits and request an I. M. E. And we don't have any issue with them requesting an I. M. E. They have a right to investigate claims, but that doesn't mean that they have a right to stop payment. And effectively, what they're doing is they're putting the burden on the insured of conducting this investigation. When it says, you know, refusing to pay claims without conducting a reasonable investigation, that seems to presume that they may conduct a reasonable investigation before making the actual and then decide later. So doesn't the question just revolve down into whether or not they conducted a reasonable investigation at the point they decided to head down that road? In part, your honor, and this is this is really the key issue here is that the policy that they're implementing is to conduct no investigation before imposing this cut off of benefits. They're not doing an investigation and saying, oh, we figured out that there's a medical issue. They're just having an adjuster basically guess. I think there'll be an issue that it needs an independent medical examination in order to resolve the question whether the payment should be made. So there's a question. Is that reasonable to say we need the the I. M. E. And then is it reasonable how long they took to accomplish and complete that investigation? But if if both of those are reasonable, then how is this violated? Well, two things on that, your honor. First is that there isn't actually a requirement that they conduct an I. M. E. That's not the only viable way for them to complete a reasonable investigation. They can conduct a records review. They can call the medical providers who are submitting bills for treatment, get opinions from them. If a treating doctor says it's not related. For me, the key question is, is there anything in the statute that says that at least with respect to these PIP payments, the insurance company, once it receives a claim, has to begin payments and cannot terminate the payments unless until they've they've have reasons to do so. It's unreasonable investigation. I think that's precisely what the regulations. And so what regulation are you pointing to? Because it wasn't clear to me that that's what the regulations actually said. So in WAC 390 284 30 395, it doesn't explicitly state this outright, that that's what has to occur. But it's our position that it's necessarily implied from the language that's contained in the regulation that requires an insurance company to obtain a medically valid opinion to support a medically based denial of coverage. So if a claim comes in, the insurance company must and it's within on its face within the coverage of the policy, the insurance company has to begin making payments and can stop payments only after an investigation. That would be our position. Is there any Washington case that that would corroborate that or that holds that it's our view, your honor, that the Durant case that talks about the Washington policy of requiring prompt payment supports that it doesn't explicitly state it. But the whole purpose of PIP coverage, what insurance companies are selling to Washington insureds is a promise that their medical bills, if they're in an accident, will get covered and paid. And when an insurance company receives a bill from a medical provider, that in and of itself is, you know, prima facie evidence of the fact that it's related because it's a treating physician saying the treatment I provided is related to this accident. And that's the information that the insurance company has. And the insurance company is paying one, say one month's claim from a doctor, create an obligation to pay the next month. Suppose they've paid for four months and then the fifth month rolls in and they look at it and think, well, it's gone on for a while. Maybe we need to take another look at it and do more investigating before we decide whether month five is really needed. Do they do they have an obligation to pay it without making an investigation or can they make an investigation? They can make an investigation. What they can withhold the payment while they make a reasonable investigation. Yes. If that's what they're doing, they can make they can make an investigation within the bounds of the wax, which effectively require an investigation to be conducted within a reasonable time, presumptively 30 days. And that's not what's happening in this case. They're not doing an investigation and pending. That's what they're trying to claim they're doing. But what they're really doing is telling insureds we're denying all future claims. If if you go and seek additional medical treatment, it will not be covered, independent of whether or not they're going to actually evaluate whether that treatment was necessary. They're not evaluating whether a treatment that insured is seeking, you know, during the pendency period before an IME, they're not going to evaluate whether or not that was necessary. They're just going to deny payment. Isn't that it's a little confusing about the sequence of events, but the district court made its legal ruling on what the meaning was of the statute, but then said there's a genuine issue of material fact as to whether the investigation was reasonable and what happened, the facts specific to your client or that Ms. Young. So isn't, didn't the district court look into the issues that you're now raising? In Ms. Young's specific instance, yes, the district court did look at for her individual claims whether or not there were any specific circumstances regarding the investigation and whether or not those circumstances indicated they'd conducted an unreasonable investigation. But this isn't just an unreasonable investigation claim. We're arguing that they unreasonably, prematurely deny before they even receive medical bills. They just tell an insured no future treatment is going to be covered based on my insurance adjuster's, you know, guess, unqualified guess. Because they deny, I thought I heard you say to Judge Collins, it's okay to deny payment of a medical bill during the pendency of your reasonable investigation. Is, is that, did I mishear that? Not, not deny your honor, but that what, from, from a practical standpoint, when an insurer receives a medical bill, they have a right to conduct an investigation. The question in this case is whether or not, basically, does the purpose of PIP allow an insurance company to put the costs of any time spent investigating onto the insured? Or does the purpose of PIP require an insurance company to? The, the answer to that seems to be yes, if it's reasonable. The, the standard is reasonable. The investigation has to be reasonable. If it's unreasonable, then they're in trouble. But if it's reasonable, they can do it and withhold the payment until it's completed. Yes, your honor. And, and in this case, what we're saying is that it's de facto unreasonable what this policy is that they're implementing because they're saying every single bill that you could submit from this time period forward is automatically, we're not going to pay it. It's not performing an evaluation of each individual medical bill, performing a reasonable investigation as to whether or not a specific service is being requested. They're just doing a blanket denial saying. Isn't your remedy, though, to establish that the insurance company violated other laws by doing that rather than rely on this, that there's no right to suspend? Well, in part, yes, there are other laws that would govern whether or not an insurance company is engaging in bad faith during an investigation or during a denial. But we believe this particular statute, sorry, regulation is applicable here because it supports the purpose of PIP, that when an insurance company is denying payment, they're stopping payment of claims. They have to have a valid medical basis if their explanation for why they're denying a claim or stopping payment is a medical explanation. It's not reasonable all the time. It's always unreasonable to deny payment without having a medical opinion that's qualified to support that. And I do want to reserve one minute for rebuttal. Good morning, Your Honors. Mark Hanover for the defendant, the Standard Fire Insurance Company. According to the plaintiff, the act of suspending payment on a PIP claim, pending the result of an independent medical examination, must be found as a matter of law to constitute denial, limitation, or termination of benefits under the WAC, regardless of the facts and circumstances. Look, can I just ask this? If it is, if we decide, contrary to the district court, that that is a denial, that the difference between suspension and denial is a matter of semantics. In fact, I think you enter these in your system as denials, I think one deposed person said. Would that be a violation of the regulation? In other words, is the insurance company obligated to pay first and not terminate payments until after an investigation? So if a claim comes in, somebody's in a car accident covered by your insurance, the client makes a claim, the claim on its face is covered by the policy. Can you say, we don't know if this is reasonable, necessary, related, therefore we're going to investigate and then we'll start payments? And is that permitted under Washington law? So they, I'm sorry. So someone's in a car accident, places a claim, puts in a claim under their PIP policy, and the insurance company says, we don't know that the medical expenses that you're incurring are, meet the policy, reasonable, necessary, related. Therefore, we're not going to pay anything until we've completed our investigation. Is that permitted by Washington law? Well, if the insurer wants to make a determination that something is not going to be paid because it is not reasonable, necessary, or related, then they would need a medical opinion if they want to, if they want to make one of the, under that standard, then they would need to get a medical opinion to do so. So the claim comes in and you say, we won't pay until we have a medical opinion. Is that, is that permitted? Well, if they, if their investigation determines that they need the consult of a medical professional in order to make a determination, then they can say that we're not going to pay until we have that consult with the medical, with the medical professional. And if they're wrong, they could be individually liable for bad faith, depending on what the state of the record was. That's what happened in McGee-Grant. In McGee-Grant, Judge Martinez found that there was no, no, nothing in the record. There was no evidence that would allow that adjuster to say that we needed a medical professional to make an assessment of reasonableness, necessity, or, or, or relatedness. And so Judge Martinez found that as a, as a, there was no, that that was just pretextual. He said it was subject to suspicion and conjecture. And so there could be liable, there could be liability for an insurer under those circumstances. But the plaintiffs would say that in a, let's say there's a circumstance like there is here. There's a prior accident. There's the accident that we're speaking about today. There's a back injury to her back. And the adjuster is trying to figure this out. And let's say that the adjuster has reason to believe that, you know, at some point after the, after the subsequent injury to the back, now all of a sudden the self-reported pain starts going up. And there's a notation from the chiropractor saying that the, at this point there's complications from this prior injury. Now the adjuster decides, well, as part of my investigation here, I need a medical professional to, to make a determination. Do you really have, in this case, that kind of a reasonable grounds to suspend payment and conduct a new investigation? I mean, it seemed like all you had was scuttlebutt from the other third, you know, the other party at fault's carrier that maybe this should get a hard look. I'm sorry. You're, you're asking whether, whether the standard had components to a reasonable investigation while you withhold the payment. One was there reasonable grounds to undertake the investigation. This is a claim that's been paid up to this point. Right. And then all of a sudden a decision is made, well, we ought to put a pause on this and take another look. So one question of whether that's reasonable is whether you had reasonable grounds to do that, to stop the payment, to interrupt. And then the second component is, was the length of the investigation reasonable or unreasonable? That's right. So on the first question, what did you have here to stop the payment? Cause it just sounded like the adjuster got some kind of comment from the other carrier and then decided to, to put a pause on this. It wasn't like there was some new medical fact. Well, there is there. I mean, you tell me. Yes, you had the original accident. The prior accident was 2013, had four years of treatment until January of 2017. Four months later, you have the accident, the second accident, which is what we're talking about here today. And that's May of 2017. The coverage is acknowledged. They start making payments and the, the self-reported pain starts doing this. The treatment starts doing this. And then in August of 2017, that's when Ms. Young reports that she was trying to pull up the rug and she re-injured her back. It was in September, the next month that the adjuster said, I, I need a medical professional to assess, to assess reasonableness, relatedness and necessity here. And there was a notations in the, in the claim notes from the chiropractor saying that by the, by the prior accident from 2013 to suss out what was related to which. And it was at that point, in order to get this medical opinion, that the adjuster said that we're, within 10 days, we're going to stop payment until, or, or suspend until there's been an IME. What the plaintiffs would do is have you, they would say that in, that you need a medical professional to first tell you that there's an issue with relatedness, necessity or reasonableness before you can get an opinion from a medical professional. Or alternatively, the plaintiffs would say that once you, once you, like, make that first payment, now you need to keep paying such that by the time you're able to get your IME scheduled, it may be moot because you've already paid out the limits under the policy. Well, the district court thought that was an open question of Washington law, state law. The question is pretty much as you framed it, whether you could suspend payments without first having a medical opinion, and then decided it, but thought it was an open question. Do you disagree that's an open question? Well, I, I don't know that there was enough factual, facts in the record here to give rise to that question altogether. But the only two cases that, that, that, that the parties have found to be most relevant would be the McGee-Grant case, which by the way, if I could speak to that for one, one moment, what, what, what Judge Martinez did there is, it was a situation where American Family or AMFAM, they, exactly, the, the, the adjuster said, well, I'm going to suspend payment pending the completion of an IME. Under the plaintiff's theory, that's it. That's the end of the case. It's over because that's denial. But that's not the end of the case in, in McGee. Judge Martinez then goes and takes a look at the state of the record and about whether that was reasonable, like Judge Collins was just saying. He, there needed to be a whole assessment there. And that is what the standard is arguing here. We're not saying that it's, it's a bright line ruling that merely asking, that suspending while seeking a medical professional's opinion through an IME, that that, we're not saying one way or the other that that's automatically liable or automatically not liable. We're just saying that's part of the investigation and it doesn't trigger automatic liability. The plaintiffs say it does and that's why they believe that Judge Maloof erred in dismissing the class allegations, because they say it's just a bright line rule. As soon as that happens, boom, there's liability. The only thing left is damages. But if you, if you acknowledge that you need to consider both of the two reasonableness periods that Judge Collins was, was referring to about whether it was reasonable to even ask for the IME and about whether the IME was scheduled within some sort of reasonable time period, that needs to be assessed on a case by case basis. Well, the district court started by deciding the legal issue, so it didn't quite agree with you, right? And then having decided the legal issue that there was no per se rule as thought, as sought by the plaintiff, then went on to say, okay, well, I'll consider whether there's a genuine issue material fact on these reasonableness components. So I guess my concern is just whether the district court's resolution of the legal issue as posed by plaintiffs was something that, that was correct or was something that should have been given to the Washington Supreme Court for determination. It was correct. There's no need for an interpretation by the Washington Supreme Court. The plaintiff's position that merely, that any suspension of payments under any circumstances constitutes a denial of a claim and therefore violates the WAC as a matter of law. There's, there's no case that's ever remotely supported that in Washington. And when you look at the cases that have tangentially touched on this, they've all found that there needs to be individual adjudications and assessments. There's nothing, that's not really something that needs to be resolved by the Washington Supreme Court, especially when you consider here that as a factual matter, when you look at what actually happened to Ms. Young, it was not a denial. When we suspended, it was actually suspended because what happens is the, the payments are suspended in September. Then she gets an IME in January and a records review in, in February. And afterwards, some of the charges like the psychiatrist bill, those, those, it turns out they say, yeah, you know what, those were not reasonable, necessary, and related. And, and so therefore, after that time, we said, therefore, now that we've gotten the medical professionals, we are not paying from any time after September, like, like our suspension was. However, the acupuncturist said, no, you know what, from September through December 4th, that's still reasonable, necessary, and related. And anything after December 4th is not. We then gave notice to Ms. Young and said, we're now, just like we said, it was suspended, and now we're coming back, and we're paying you for the additional three months, now that we've gotten a medical professional's determination. How does your argument interrelate with the 30-day period for making a decision? Well, the, the, the, the WAC does give 30 days as presumptive, but it says that if it's reasonable, you might need, require more than 30 days. You've got to give notice every time you go past 30 days, and that's going, again, going to be a case-by-case scenario. In some circumstance, if, if, if a policyholder believes that the insurer's acting unreasonable and they violated the WAC, there's, there's a remedy. Which is a bad faith claim? Yes. Yeah, there, there, there could be a bad, there can be a bad faith claim, depending on the particular facts and circumstances, and Judge Maloof-Peterson allowed the bad faith, the breach of contract, the negligence claims, and, and the CPA to go to the jury. And the jury made individual determinations on each of those claims on a case-by-case situation. They found liability for, for bad faith, based on, on the whole course of conduct with respect to Ms. Young. They did not find breach of contract. They found a CPA violation, and they found a negligence violation, but zero damages. And what was the CPA violation based on? What was it based on? Well, I don't, I mean, I, I don't know what the jury's thinking was, but when Judge Maloof-Peterson needed to determine what fees might be appropriate, she found, she had a difficult time understanding how the jury could come up with damages under the CPA claim, and so she said it was supported by, I think she said, the thinnest of evidence. So, Your Honor, um, the, what happened with Ms. Young presents perhaps the, the, the perfect circumstances to demonstrate to you why you need to consider all the evidence of record at each point in time based on, uh, what, what happened to her. You need to consider prior treat, uh, prior accidents, the actual accident, anything that happens subsequently. You need to consider, um, the course of communications among the insurer, among, uh, the medical providers, among the policy holder. And when you consider all that, everything needs to be done, uh, individually. They don't support any kind of, uh, Rule 23 predominance finding as a matter of law, and Judge Peterson was correct to, uh, dismiss the class allegations. Okay. Thank you. Thank you. Can I just ask you a quick clarifying question, which is, is the issue of the reasonableness of the investigation in her case before us in any respect? No, uh, Your Honor, this, the, I, I don't understand why the, uh, Mr. Hanover was trying to relitigate what the jury has already decided on Ms. Young's individual claims. That's not part of, of the court's decision here. Um, what's your understanding of what the CPA claim found by the jury was based on? Uh, so Your Honor, I, I was the trial attorney here and the CPA claim was based on a violation of the WACs, including WAC 395. Uh, our theory at trial basically was, uh, that they had misrepresented to Ms. Young, that they were trying to, that they were suspicious her claims weren't medically supportable when really they were motivated by a concern about getting reimbursed through subrogation. And that the fact that they had deprived Ms. Young of, of, uh, benefits during this time and had given her, um, uh, not just, uh, uh, increased distress about whether or not her bills were going to get paid, but also impacted, um, her financial ability to take care of her mom, uh, that that's where the, the CPA damages came from. And, and Mr. Hanover was that the court thought the evidence presented on that was thin, but the jury credited it. Um, and this court's not here to, you know, evaluate whether or not that decision was correct. Um, I did want to make just one point, if Your Honors will permit me, on Durant. Uh, Washington State has a strong public policy in favor of full compensation of medical benefits. And, uh, two members of the panel have asked essentially the same question about this hypothetical. If an insured submits a claim and the insurer immediately says, well, I need to prove that this is medically reasonable, necessary, and related first, and I won't pay until then, doesn't that violate the, the purpose of PIP coverage to get prompt immediate payment? And, and we submit that the answer to that is yes. And that Durant makes that clear. And that if the court thinks it's, a more precise statement about this WAC that it can certify to the Washington Supreme Court that question. Thank you. We thank both sides for their argument. The case of Young versus the Standard Fire Insurance Company is submitted. Uh, we're going to take a brief five minute recess.
judges: IKUTA, COLLINS, Fitzwater